1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

AQUA-CHEM, INC.,

11                          Plaintiff,

12                 v.

13   MARINE SYSTEMS, INC.,

14                          Defendant.

CASE NO. C13-2208JLR

ORDER DENYING MOTION TO
DISMISS

15          Before the court is Defendant Marine Systems, Inc.'s ("MSI") motion to dismiss.

16   (Mot. (Dkt. # 8).)  This action was brought by Plaintiff Aqua-Chem, Inc. ("Aqua-Chem")

17   against MSI under Washington's version of the Uniform Fraudulent Transfer Act

18   ("UFTA"), Chapter 19.40 RCW.  Aqua-Chem asks the court to set aside an allegedly

19   fraudulent transfer made to MSI from a third party, Alfa-Tec, Inc. ("Alfa-Tec").  (*See*

20   Compl. (Dkt. # 1-1).)  MSI now moves to dismiss Aqua-Chem's complaint, arguing that

21   it is statutorily barred by Washington's receivership laws, does not state a cognizable

22   claim for fraudulent transfer, and does not meet the required pleading standards.  (*See*

ORDER- 1

1   Mot.)  The court has examined the submissions of the parties, the complaint, and the

2   relevant law, and, considering itself fully advised, DENIES the motion.  None of MSI's

3   arguments warrant dismissal of Aqua-Chem's complaint.

4   # I.   BACKGROUND

5       This case involves three different companies doing business in the marine sector.

6   Plaintiff Aqua-Chem develops, engineers, and manufactures technology related to water

7   processing systems, among other things.  (Compl. ¶ 2.1.)  Defendant MSI provides

8   service and parts for a variety of marine applications.  (*Id.* ¶ 2.2.)  The dispute between

9   these two parties arises largely out of the actions of third-party Alfa-Tec.  (*See id.* ¶¶ 3.1-

10  3.17.)  Alfa-Tec is a Washington Corporation that, before it ceased doing business,

11  provided equipment, parts, and services to a variety of business focusing on the marine

12  sector.  (*Id.* ¶ 3.4.)

13      The dispute arose after Alfa-Tec failed to pay $864,012.21 that it owed to Aqua-

14  Chem.  In February 2010, Aqua-Chem agreed to make Alfa-Tec a distributor of its

15  equipment.  (*Id.* ¶ 3.5.)  Alfa-Tec began to purchase parts and equipment from Aqua-

16  Chem, but failed to pay for many of the items it purchased.  (*Id.* ¶ 3.6.)  Evidently, Alfa-

17  Tec was also behind in its payments to another creditor, Seattle Bank.  (*Id.* ¶ 3.8.)  In

18  January 2012, Alfa-Tec received a large payment from the sale of a valuable Aqua-Chem

19  product—a 450 metric ton reverse osmosis water maker and associated spare parts.  (*Id.*

20  ¶¶ 3.9, 3.13.)  However, Alfa-Tec chose to pay Seattle Bank instead of Aqua-Chem.  (*Id.*

21  ¶ 3.14.)  In July 2012, Alfa-Tec ceased doing business without paying Aqua-Chem the

22  amount due.  (*Id.* ¶ 3.17.)

1    At that time, Alfa-Tec still had valuable assets.  Indeed, around that time, Alfa-Tec

2    was in discussions to sell its operation to MSI for a purchase price of approximately $2.8

3    million.  (*Id.* ¶ 3.18.)  According to Aqua-Chem, much of that value arose from a

4    distributorship agreement Alfa-Tec had with a Swedish company called Alfa Laval, a

5    "valuable service department," and trade secrets in the form of customer lists, customer

6    data, history, and goodwill in the form of ongoing business relationships.  (*Id.* ¶¶ 3.19-

7    21.)  Aqua-Chem alleges that these assets made up approximately $2.4 million of the

8    estimated $2.8 million in value Alfa-Tec enjoyed.  (*Id.* ¶ 3.21.)

9    The alleged fraud involved these assets.  Aqua-Chem alleges that MSI was

10   particularly interested in acquiring the Alfa Laval distributorship.  (*Id.* ¶ 3.22-23.)

11   However, MSI and Alfa-Tec never signed a contract involving the distributorship or

12   related assets.  (*Id.* ¶ 3.24.)  Instead, in February 2012, MSI met with Alfa Laval, Alfa-

13   Tec general manager Troy Bills, and Alfa-Tec president Kevin Oakley.  (*Id.*)  It is unclear

14   exactly what occurred at the meeting, but afterwards, all negotiations for MSI to purchase

15   Alfa-Tec ceased.  (*Id.* ¶ 3.25.)  The parties agreed that MSI would become Alfa Laval's

16   new distributor, and the distributorship agreement between Alfa-Tec and Alfa Laval was

17   replaced by a similar agreement between Alfa Laval and MSI.  (*Id.* ¶ 3.25-3.27.)  MSI

18   never paid any purchase price to Alfa-Tec, but nevertheless received Alfa-Tec's trade

19   secrets, customer lists, and customer data.  (*Id.* ¶¶ 3.25, 3.30.)  Not long after, MSI hired

20   both Mr. Bills and Mr. Oakley to work at MSI.  (*Id.* ¶¶ 3.28-29.)  Aqua-Chem alleges

21   that, in effect, MSI acquired all of the most valuable assets from Alfa-Tec without paying

22

1  for them.  (*See id.* ¶¶ 3.18-34.)  Aqua-Chem also alleges that, as a result, Alfa-Tec

2  avoided paying its debts to Aqua-Chem.  (*See id.*)

3      In December 2012, Alfa-Tec filed a Petition for Receivership in King County

4  Superior Court.  (*Id.* ¶ 3.32.)  Several assets were notably absent from the estate,

5  including the distributorship agreement, trade secrets, customer lists, and customer data.

6  (*Id.* ¶ 3.33.)  Instead, the estate included only $87,841.00 worth of equipment and

7  inventory, which was described as "all property of the Estate."  (*Id.* ¶ 3.32.)  In March

8  2013, King County Superior Court approved a sale of all remaining Alfa-Tec assets to

9  MSI for $165,000.00.  (*Id.* ¶ 3.34.)

10     Aqua-Chem brought this complaint in King County Superior Court, alleging

11  violations of UFTA and asking the court to set aside the non-receivership transfers from

12  Alfa-Tec to MSI.  (*See* Not. of Removal (Dkt. # 1).)  MSI removed to this court (*id.*), and

13  promptly filed this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (*see*

14  Mot.).

## II.    ANALYSIS

**A.    Standard on a Motion to Dismiss**

17     Under Federal Rule of Civil Procedure 12(b)(6), a court should dismiss a

18  complaint if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P.

19  12(b)(6).  In determining whether to grant a Rule 12(b)(6) motion, the court must accept

20  as true all "well-pleaded factual allegations" in the complaint.  *Ashcroft v. Iqbal*, 556 U.S.

21  662, 679 (2009).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks

22  sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*,

ORDER- 4

1   901 F.2d 696, 699 (9th Cir. 1990).  To sufficiently state a claim and survive a motion to

2   dismiss, the complaint "does not need detailed factual allegations" but the "[f]actual

3   allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl.*

4   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must contain "sufficient

5   factual matter, accepted as true, to state a claim to relief that is plausible on its face."

6   *Iqbal*, 556 U.S. at 663 (internal quotation marks omitted); *see also Telesaurus VPC, LLC*

7   *v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  The court is not bound to accept as true

8   labels, conclusions, formulaic recitations of the elements, or legal conclusions couched as

9   factual allegations.  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265,

10  286 (1986)).  As the Supreme Court said in *Iqbal*, a complaint must do more than tender

11  "'naked assertions' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678

12  (quoting *Twombly*, 550 U.S. at 557).

13          MSI has made three separate arguments for Rule 12(b)(6) dismissal, and the court

14  addresses each in turn below.

15  **B.      MSI's First Argument:  The Receivership Statute**

16          MSI first argues that Aqua-Chem's claims are barred by Washington's

17  receivership statute.  (Mot. at 5-8.)  Specifically, MSI argues that if Aqua-Chem wanted

18  to bring fraudulent transfer claims, it needed to bring them in the receivership action.

19  (*See id.*)  In that action, MSI agreed to purchase all of Alfa-Tec's assets "of every kind

20  and description and wherever located, belonging to or used or intended to be used in

21  Alfa-Tec Inc.'s business . . . ."  (*See* Stover Decl. (Dkt. # 8-1) at 2-4.)  MSI argues that

22  this includes "customer lists, customer information and customer data, and any rights

1    Alfa-Tec retained under its distribution agreement . . . ." (Mot. at 5-6.)  MSI points out

2    that, in Washington, creditors of a receivership estate are bound by the acts of the

3    receiver if they had notice of the receivership and did not assert claims therein.  *See* RCW

4    7.60.190(1).  Thus, MSI argues that Aqua-Chem's claims are barred because they were

5    transferred in the receivership sale.

6            This argument is flawed.  Aqua-Chem alleges a reality contrary to that posited by

7    MSI.  Aqua-Chem alleges that Alfa-Tec transferred its interests in the distributorship

8    agreement, customer lists, customer information, and customer data before the

9    receivership petition was filed.  (*See* Compl. ¶¶ 3.18-33.)  Thus, these assets would not

10   constitute assets "belonging to or used or intended to be used in Alfa Tec Inc.'s

11   business . . ." at the time the receivership sale was completed.  (*See id*; Stover Decl. at 2-

12   4.)  As Aqua-Chem argues, the assets in question did not belong to Alfa-Tec at the time

13   of the transfer and were therefore not part of the receiver sale.  (*See* Mot. at 15-18.)  At

14   this stage of the litigation, the court must accept Aqua-Chem's allegations in this regard.

15   *Iqbal*, 556 U.S. at 679.  Further, it is axiomatic that a receiver may only transfer such

16   property interests as are owned by the estate, not more.  *Morse Electro Prods. Corp. v.*

17   *Benefit Indus. Loan Co.*, 579 P.2d 1341, 1342 (Wash. 1978); *Colver v. Fraser, Goodwin*

18   *& Colver*, 7 P.2d 24, 26 (Wash. 1932).  The receiver "takes property as he finds it . . ."

19   and cannot transfer any better or different interest than the company had.  *Morse*, 579

20   P.2d at 1342; *Colver*, 7 P.2d at 26.  These principles foreclose MSI's argument that

21   Aqua-Chem's complaint is barred by Washington's receivership laws.  The transfer could

22   not have included the assets in question if, as Aqua-Chem alleges, those assets were not

owned by Alfa-Tec at the time the receivership petition was filed or the time of the transfer.

**C.     MSI's Second Argument:  The Complaint Does Not State a Cognizable Claim for Fraudulent Transfer**

Next, MSI argues that Aqua-Chem does not state a claim that is cognizable under UFTA.  (Mot. at 8-13.)  MSI argues that the assets at issue (the distributorship agreement, the customer data, and so on) are not proper subjects of a claim for fraudulent transfer under Washington law.  (*See id.*)  MSI argues that the alleged transfer of these assets does not meet the definition of a "transfer" under UFTA, and that the assets in question are not "assets" as that term is defined in UFTA.  (*See id.*)  As such, MSI argues that Aqua-Chem has no claim under UFTA.

The basic law involved is relatively straightforward.  Under Washington's version of UFTA (which is codified at Chapter 19.40 RCW), fraudulent transfers may be set aside if they are made with actual intent to hinder, delay, or defraud a creditor, or if they are made without receiving reasonably equivalent value.  RCW 19.40.041, .051, .071. The term "transfer" is defined broadly:  "'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."  RCW 19.40.011(12).  In turn, an "asset" is "property of a debtor," and "property" is "anything that may be the subject of ownership."  RCW 19.40.011(2), (10).  Hence, a transfer requires disposing of or parting with something that may be the subject of ownership.  RCW 19.40.011(2), (10), (12).

1    The definition of "transfer" is "as broad as possible."  *In re Feiler*, 218 B.R. 957,

2    960 (Bkrtcy. N.D. Cal. 1998) (citing *In re Smiley*, 864 F.2d 562, 565 (7th Cir. 1989)).

3    The definition includes "every mode" of disposing of property, and is derived from a

4    similar definition in § 101(48) of the Uniform Probate Code that also counts as a transfer

5    "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of

6    disposing of or parting with an asset."  *See* RCW 19.40.011(12).  This includes many

7    different kinds of transactions.  For example, granting a security interest may be a

8    transfer, *see In re Florida Bay Trading Co.*, 177 B.R. 374, 382 (Bkrtcy. M.D. Fla. 1994),

9    or cancelling a contract for a deed, *In re Butler*, 552 N.W.2d 226, 234 (Minn. 1996), or

10   creating an annuity to transfer the right to some future expectation of income, *see In re*

11   *Covino*, 187 B.R. 773, 778-80 (Bkrtcy. S.D. Fla. 1995).[1]  Indeed, any transaction that

12   greatly reduces the value of a debtor's estate may be a transfer.  *Greenfield v. Arden*

13   *Seven Penn Partners, L.P.*, 757 N.E.2d 699, 703-04 (Ind. Ct. App. 2001).  This broad

14   definition comports with the purpose of the act:  to honor the principle that the debtor's

15   property constitutes a fund from which creditors may be paid, and the debtor may not

16   frustrate the creditor's right to obtain payment from that fund.  *See, e.g.*, *Benson v.*

17   *Richardson*, 537 N.W.2d 748, 756 (Iowa 1995); *see also Freitag v. McGhie*, 947 P.2d

18   1186, 1189 (Wash. 1997).  Indeed, fraudulent transfer doctrine is "a flexible principle

19   _____

20   [1] The court may consider as persuasive authority cases from other jurisdictions that have
     adopted UFTA.  *Thompson v. Hanson*, 174 P.3d 120, 126 (Wash. Ct. App. 2007).  One explicit
21   purpose of UFTA is uniformity among states that have adopted it, so other states' interpretations
     provide a useful guide.  *Id.*; RCW 19.40.903 ("This chapter shall be applied and construed to
22   effectuate its general purpose to make uniform the law with respect to the subject of this chapter
     among the states enacting it.").

1  that looks to substance, rather than form, and protects creditors from any transactions the

2  debtor engages in that have the effect of impairing their rights . . . ." *Boyer v. Crown*

3  *Stock Distrib.*, 587 F.3d 787, 793 (7th Cir. 2009).

4      Given this broad definition, Aqua-Chem alleges facts that, if proven, would

5  constitute a transfer.  Aqua-Chem alleges a single unified course of conduct in which

6  Alfa-Tec, Alfa Laval, and MSI conspired to extract roughly $2.4 million of value from

7  Alfa-Tec at Aqua-Chem's expense.  (Compl. ¶¶ 3.18-34.)  In return, MSI hired Alfa-

8  Tec's general manager and president and Aqua-Chem received nothing.  (*See id.*)  If this

9  depiction of events is accurate, Aqua-Chem has described an indirect "mode . . . of

10 disposing of or parting with an asset" that, although non-conventional, is within the

11 "flexible" and "broad" confines of UFTA.  *See Feiler*, 218 B.R. at 960; *Boyer*, 587 F.3d

12 at 793.  The court must accept Aqua-Chem's allegations as true at the motion to dismiss

13 stage.  *Iqbal*, 556 U.S. at 679.  Accordingly, MSI's argument fails and dismissal is not

14 appropriate.

15      None of MSI's arguments to the contrary are persuasive.  First, MSI argues that

16 there can be no cognizable "transfer" because Alfa-Tec's distributorship agreement with

17 Alfa Laval contained a clause saying the agreement could not be assigned.  (Mot. at 8-9.)

18 This is irrelevant because, in fact, Aqua-Chem does not claim that the agreement was

19 assigned.  (*See* Compl. ¶¶ 3.18-34.)  Rather, Aqua-Chem asserts that the transfer was

20 more complex, as described above.  (*See id.*)

21      More to the point, MSI argues that cancellation of a contract can never be a

22 "transfer."  (*See* Mot. at 9-12.)  However, the weight of authority suggests otherwise.

ORDER- 9

1   *See, e.g.*, *In re EBC I, Inc.*, 356 B.R. 631 (Bkrtcy. D. Del. 2006) (surveying the state of

2   the law on this question and concluding that termination of a contract can be a transfer);

3   *In re PurchasePro.com, Inc.*, 322 B.R. 417, 426-31 (Bkrtcy. D. Nev. 2005) (same).  MSI

4   has cited to no persuasive authority for the somewhat novel proposition that termination

5   of a contract can never be a transfer of property.  In any event, this argument distracts

6   from the real issue.  Aqua-Chem alleges not merely the cancellation of a contract, but a

7   complex and well-orchestrated course of action that included direct transfers of trade

8   secrets, customer lists, data, and history—all of which fall outside the scope of MSI's

9   argument.  (Compl. ¶¶ 3.18-34.)  This constitutes another, separate reason why MSI's

10  argument fails.

11        MSI also makes a cursory argument that the distributorship agreement is not

12  "property" that may be the subject of a transfer.  (Mot. at 12-13.)  But this is just another

13  formulation of the argument made directly above, and the court rejects it for the same

14  reasons described above.

15  **D.    MSI's Third Argument:  The Complaint Does Not Meet the Required
           Pleading Standards**

16        Last, MSI argues briefly that Aqua-Chem's complaint does not meet the pleading

17  standards established by *Iqbal*, *Twombly*, and Federal Rule of Civil Procedure 9(b).

18  However, the court has examined the complaint in detail and concludes that it meets

19  these standards.

20        First, it meets the *Iqbal/Twombly* pleading standard.  Under that standard, the

21  factual allegations contained in the complaint "must be enough to raise a right to relief

ORDER- 10

1   above the speculative level." *Twombly*, 550 U.S. at 555.  The complaint must contain

2   "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

3   face." *Iqbal*, 556 U.S. at 663; *see also Telesaurus*, 623 F.3d at 1003.  This standard

4   applies to suits removed from state court under 28 U.S.C. § 1441 just as it does to

5   complaints originally filed in federal court.  *See* Fed. R. Civ. P. 81(c); *Baricevic v. Mortg.*

6   *Elec. Registration Servs., Inc.*, No. 3:13-cv-01503-MO, 2014 WL 291091, at *1 (D. Or.

7   Jan. 24, 2014).  Aqua-Chem's complaint plainly alleges a plausible claim for fraudulent

8   transfer.  As described above, Aqua-Chem alleges a well-orchestrated course of conduct

9   that allowed Alfa-Tec to avoid paying Aqua-Chem, Alfa-Tec's founders to receive

10  lucrative positions with MSI, and MSI to receive a substantial amount of value at Aqua-

11  Chem's expense.  Aqua-Chem's complaint plausibly alleges all elements of a fraudulent

12  transfer claim.

13          Likewise, Aqua-Chem's complaint meets the Rule 9(b) pleading standard.  Under

14  Rule 9(b), a plaintiff alleging fraud must "state with particularity the circumstances

15  constituting fraud . . . , [although] [m]alice, intent, knowledge, and other conditions of a

16  person's mind may be alleged generally."  Rule 9(b) requires that, when averments of

17  fraud are made, the circumstances constituting the alleged fraud must be "specific enough

18  to give defendants notice of the particular misconduct . . . so that they can defend against

19  the charge and not just deny that they have done anything wrong. . . .  Averments of fraud

20  must be accompanied by 'the who, what, when, where, and how' of the misconduct

21  charged." *Viss v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  This

22  standard applies to fraudulent transfer actions and to cases originally filed in state court.

ORDER- 11

1   *See, e.g.*, *Kelleher v. Kelleher*, No. 13-cv-05450-MEJ, 2014 WL 94197, at *5 (N.D. Cal.

2   Jan. 9, 2014); Fed. R. Civ. P. 81(c); *Baricevic*, 2014 WL 291091, at *1.  Aqua-Chem's

3   complaint satisfies Rule 9(b).  Aqua-Chem describes the alleged fraud with sufficient

4   particularity to satisfy the requirements of Rule 9(b).  Aqua-Chem describes who

5   perpetrated the fraud (*see* Compl. ¶¶ 2.2-3.1), what the fraud consisted of (*see id.* ¶¶ 3.18-

6   29), when the fraud occurred (*id.* ¶¶ 3.24-29), where the fraud occurred (*id.*), and how it

7   was carried out (*id.* ¶¶ 3.18-29).  There can be little question that the complaint is

8   sufficient to give MSI notice of the misconduct involved so that it can defend against the

9   charge.  *See Viss*, 317 F.3d at 1106.  Accordingly, Aqua-Chem's complaint meets the

10  Rule 9(b) standard.

11                      **III.    CONCLUSION**

12          For the foregoing reasons, and having rejected all of MSI's arguments, the court

13  DENIES MSI's motion to dismiss (Dkt. # 8).

14          Dated this 27th day of February, 2014.

15

16

17  _____

18  JAMES L. ROBART
    United States District Judge

19

20

21

22

ORDER- 12